WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Katrin Nicole Henry,
Plaintiff,
v.
Arizona Board of Regents, et al.,
Defendants.

No. CV-26-00050-TUC-RM

**ORDER**

Plaintiff Katrin Nicole Henry, who is proceeding in forma pauperis (Doc. 15), initiated this action on January 27, 2026 (Doc. 1). On April 27, 2026, the Court dismissed Plaintiff's Complaint on screening under 28 U.S.C. § 1915(e)(2) for failure to state a claim on which relief may be granted. (Doc. 15.) Plaintiff thereafter filed a First Amended Complaint ("FAC"). (Doc. 16.)

## I. Statutory Screening of Complaints

The Prison Litigation Reform Act states that a district court "shall dismiss" an in forma pauperis complaint if, at any time, the court determines that the action "is frivolous or malicious" or that it "fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2). Section 1915(e) "applies to all in forma pauperis complaints, not just those filed by prisoners." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc); *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (per curiam).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

required, but Rule 8 "demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Court must "construe pro se filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A complaint filed by a pro se litigant "must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (internal quotation omitted). Nevertheless, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

## II. Plaintiff's First Amended Complaint

In her FAC, Plaintiff sues Rick Schnellman, Janet Cooley, Jeannie Lee, and the Arizona Board of Regents under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and state law, seeking declaratory and injunctive relief as well as compensatory and punitive damages. (Doc. 16.) Plaintiff alleges the following.

Plaintiff was enrolled as a student in the University of Arizona College of Pharmacy from approximately August 2019 through May 2025. (*Id.* at 2 ¶ 2.) Schnellman was Dean of the College of Pharmacy; Cooley participated in decisions concerning Plaintiff's education, grades, and clinical placements; and Lee held an administrative position within the College of Pharmacy. (*Id.* at 3-4 ¶¶ 16, 18, 20.)

While enrolled in the College of Pharmacy, Plaintiff served in a leadership role in a Christian student organization. (*Id.* at 4 ¶ 24.) Lee scrutinized Plaintiff's participation in Christian student activities. (*Id.* at 4 ¶ 25.)

Plaintiff objected to COVID-19 vaccination requirements and the disclosure of her vaccination status due to sincerely held religious beliefs and medical concerns. (*Id.* at 4 ¶ 27.) Cooley identified Plaintiff as the only student who had not provided proof of COVID-19 vaccination. (*Id.* at 4 ¶ 26.) University personnel warned Plaintiff that failing to provide vaccination-related documents could result in lost rotations, lost educational opportunities, and delayed graduation. (*Id.* at 4 ¶ 28.) Plaintiff experienced "increased scrutiny regarding clinical placements, progression issues, and academic matters," and she lost or was denied multiple clinical opportunities. (*Id.* at 5 ¶¶ 29-30.)

Plaintiff alleges that Defendants "applied academic progress policies more harshly" against her than other similarly situated students "by repeatedly pursuing expulsion rather than remediation." (*Id.* at 5 ¶ 32.) Even though "University policies represented that students possessed access to academic appeal procedures and grade-review procedures," and Plaintiff repeatedly requested information concerning her appeal rights, "Plaintiff was not informed of meaningful procedures to challenge grades and dismissal decisions." (*Id.* at 5 ¶ 34-36.) Furthermore, grades and dismissal-related decisions were delayed or withheld "in ways that interfered with Plaintiff's ability to timely pursue appeals." (*Id.* at 5 ¶ 37.) Plaintiff "was academically dismissed before receiving a final failing grade supporting the dismissal decision." (*Id.* at 5 ¶ 39.) Schnellman "directed Plaintiff to repeat coursework rather than providing meaningful access to academic review procedures." (*Id.* at 5 ¶ 39.) Plaintiff eventually used the grade-appeal process to successfully remove at least one failing grade from her transcript. (*Id.* at 5 ¶ 40.)

Plaintiff was injured during a fall and "thereafter experienced difficulties involving walking, standing, concentration, and physical functioning." (*Id.* at 6 ¶ 41.) Plaintiff took a medical leave of absence with the intent to return to her program of study, and she informed University personnel and faculty of her injury and limitations. (*Id.* at 6 ¶¶ 42-

43.) Defendants "failed to reasonably accommodate Plaintiff's disability and instead continued adverse educational and disciplinary actions," including the cancellation of at least one clinical rotation. (*Id.* at 6 ¶¶ 44-45.)

Cooley and others maintained "false, misleading, materially incomplete" and "retaliatory" comments about Plaintiff within CORE Elms and related University systems. (*Id.* at 6 ¶¶ 46-48.) The comments "portrayed Plaintiff as imposing beliefs on others, making disparaging comments about the school, [and] being problematic, or otherwise unsuitable for professional participation." (*Id.* at 6 ¶ 47.) The comments were accessible to University personnel, instructors, affiliates, and rotation-related personnel. (*Id.* at 6 ¶ 49.) The comments damaged Plaintiff's professional reputation and caused her to lose at least two clinical rotations, and they continue to impair her ability to pursue employment opportunities. (*Id.* at 6 ¶ 50-51.)

Plaintiff alleges five causes of action. In Counts One and Two, Plaintiff asserts First Amendment violations under 42 U.S.C. § 1983 against Schnellman, Cooley, and Lee. (*Id.* at 7-8 ¶¶ 53-66.) Count One alleges that Defendants interfered with Plaintiff's clinical placements, progression opportunities, and educational standing after Plaintiff asserted religious objections to COVID-19 vaccination and to the disclosure of her vaccination status. (*Id.* at 7 ¶¶ 53-60.) Count Two alleges that Defendants subjected Plaintiff to adverse educational and academic actions—including interference with clinical placement, maintenance of adverse records, and delayed appeal access—in retaliation for Plaintiff engaging in protected activity, including asserting religious objections, requesting accommodations, and participating in Christian student activities. (*Id.* at 7-8 ¶¶ 61-66.)

In Count Three, Plaintiff asserts a claim for prospective equitable relief against the Arizona Board of Regents under the ADA and the Rehabilitation Act. (*Id.* at 8 ¶¶ 67-73.) Plaintiff alleges that she was qualified to participate in the educational program with reasonable accommodation, but Defendants failed to provide reasonable accommodation, denied Plaintiff equal access to educational opportunities, and interfered with Plaintiff's clinical opportunities after learning of Plaintiff's disability. (*Id.*)

In Count Four, Plaintiff asserts a procedural due process violation under 42 U.S.C. § 1983 against Schnellman and Lee, challenging Plaintiff's academic dismissal from the College of Pharmacy and alleging that these Defendants failed to provide her with meaningful notice of and access to grade appeal procedures. (*Id.* at 8-9 ¶¶ 74-84.)

In Count Five, Plaintiff asserts a defamation and false light claim against Cooley, alleging that she published and maintained false, misleading, and materially incomplete statements about Plaintiff within University systems, resulting in damage to Plaintiff's professional reputation, the loss of at least two clinical rotations, and interference with employment opportunities. (*Id.* at 9-10 ¶¶ 85-95.)

Plaintiff seeks compensatory and punitive damages; a declaratory judgment that Defendants violated her constitutional and statutory rights; and injunctive relief requiring (1) meaningful access to academic review and appeal procedures, (2) the removal or correction of records containing false or defamatory statements, and a prohibition on dissemination of such statements; and (3) restoration of "Plaintiff's eligibility to pursue clinical, educational, postgraduate, residency, and professional opportunities on a nondiscriminatory basis." (*Id.* at 11.)

## III. Discussion

The Court first addresses Plaintiff's 42 U.S.C. § 1983 claims and then discusses Plaintiff's disability discrimination and state-law claims.

### A. Personal Involvement in Alleged Constitutional Violations

A person may be held liable under 42 U.S.C. § 1983 if, while acting under color of state law, the person deprives another of constitutional rights. To state a claim on which relief may be granted under § 1983, a plaintiff must plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (a person may be held liable under § 1983 only if there is "a showing of personal participation in the alleged rights deprivation").

Plaintiff's FAC repeatedly refers to conduct by "Defendants," without identifying

the specific actions that each Defendant took. For example, Plaintiff alleges that Schnellman had "authority over academic progress, disciplinary procedures, appeals, and student academic administration" (Doc. 16 at 3, 9 ¶ 16, 77), but the only specific action attributed to Schnellman in the FAC is that he directed Plaintiff "to repeat coursework rather than providing meaningful access to academic review procedures" (*id.* at 5 ¶ 39). Plaintiff alleges that Lee held an administrative position "and participated in or possessed knowledge concerning Plaintiff's leave of absence, academic progression, disability-related circumstances, and procedural issues" (*id.* at 4, 9 ¶¶ 20, 78), but the only specific action attributed to Lee is that she scrutinized Plaintiff's participation in Christian student activities (*id.* at 4 ¶ 25). Plaintiff alleges that Cooley identified Plaintiff as the only student who had not provided proof of COVID-19 vaccination and "thereafter participated in adverse academic and clinical actions affecting Plaintiff" (*id.* at 4, 7 ¶¶ 26, 58), but Plaintiff does not specify what adverse academic and clinical actions Cooley took.

This lack of specificity concerning the actions each individual Defendant took prevents Plaintiff from stating a claim on which relief may be granted under 42 U.S.C. § 1983. This defect alone requires dismissal of the § 1983 claims, but the Court will discuss Plaintiff's specific claims below to provide Plaintiff guidance in drafting a second amended complaint.

**B. Free Exercise—42 U.S.C. § 1983**

The Free Exercise Clause of the First Amendment, made applicable to the States by incorporation into the Fourteenth Amendment, prevents the government from making laws prohibiting the free exercise of religion. *Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 876-77 (1990). However, the Free Exercise Clause typically does not prohibit "neutral, generally applicable laws that incidentally burden the exercise of religion." *Holt v. Hobbs*, 574 U.S. 352, 356-57 (2015); *see also Smith*, 494 U.S. at 878-882. Neutral and generally applicable rules are evaluated under rational basis review and upheld so long as "they are rationally related to a legitimate governmental purpose." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075-76, 1084 (9th Cir. 2015).

The allegations of Plaintiff's FAC indicate that the College of Pharmacy's COVID-19 requirements were neutral and generally applicable; therefore, it appears that rational basis review applies to Plaintiff's Free Exercise claim. Courts in the Ninth Circuit have upheld COVID-19 vaccination mandates under rational basis review. *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177-1182 (9th Cir. 2021) (denying injunction pending appeal after finding rational basis review applicable); *Chavez v. San Francisco Bay Area Rapid Transit Dist.*, 723 F. Supp. 3d 805 (N.D. Cal. 2024) (dismissing Free Exercise claim on summary judgment after finding COVID-19 vaccination requirement rationally related to a compelling state interest in stemming the spread of COVID-19).

**C. First Amendment Retaliation—42 U.S.C. § 1983**

"To state a First Amendment retaliation claim, [Plaintiff] must plausibly allege that (1) she engaged in a constitutionally protected activity, (2) Defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in Defendants' conduct." *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1019 (9th Cir. 2020). To prevail on such a claim, Plaintiff must establish that Defendants' adverse actions "would not have been taken absent the retaliatory motive." *Id.*

Plaintiff's FAC alleges that Plaintiff engaged in protected conduct by asserting religious objections to COVID-19 vaccination requirements, participating in Christian student activities, requesting accommodations, objecting to Defendants' actions, and pursuing academic complaints and appeals. (Doc. 16 at 7 ¶ 62.) Plaintiff also generally discusses allegedly retaliatory actions. However, Plaintiff does allege any facts plausibly showing that her protected conduct was a motivating factor in any defendant's allegedly retaliatory actions. Furthermore, Plaintiff does not specify when any allegedly retaliatory actions occurred, thereby preventing the Court from evaluating whether temporal proximity plausibly supports a finding of causation.

**D. Procedural Due Process—42 U.S.C. § 1983**

"A procedural due process claim has two elements: deprivation of a constitutionally

protected liberty or property interest and denial of adequate procedural protection." *Krainski v. Nevada ex rel. Bd. of Regents of Nevada System of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010). The United States Supreme Court has assumed, without deciding, that students have a protected property or liberty interest in continued enrollment in an institution of higher education. *See Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 84-85 (1978). But the Supreme Court has recognized a "significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct," mandating "far less stringent procedural requirements in the case of an academic dismissal." *Id.* at 86. "Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Id.* at 90. Accordingly, "[a]cademic dismissals do not require a hearing," and they "meet the requirements of procedural due process so long as the dismissal decision is careful and deliberate." *Oyama v. U. of Hawaii*, 813 F.3d 850, 875 (9th Cir. 2015) (internal quotation and alteration marks omitted).

Plaintiff alleges in the FAC that Defendants failed to provide her with "meaningful notice" of procedures for appealing her grades (Doc. 16 at 9 ¶ 80), but this allegation, without more, does not show that the academic dismissal decision was not careful and deliberate. Plaintiff also alleges that "grades and dismissal decisions were delayed or structured in ways that that interfered with [her] ability to challenge adverse decisions" and that she "was academically dismissed before receiving a final grade supporting dismissal." (*Id.* at 9 ¶¶ 81-82.) But Plaintiff does not provide any factual details and does not attribute this conduct to any named defendant.

**E. ADA and Rehabilitation Act**

To establish a prima face case of discrimination in violation of Title II of the ADA and Section 504 of the Rehabilitation Act, Plaintiff must show that: "(1) she is a qualified individual with a disability; (2) she was denied a reasonable accommodation that she needs

in order to enjoy meaningful access to the benefits of public services; and (3) the program providing the benefit receives federal financial assistance." *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016) (internal alteration marks omitted). To establish that she was qualified to remain in the College of Pharmacy, Plaintiff must show "the existence of a reasonable accommodation that would enable her to meet the educational institution's essential eligibility requirements." *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1047 (9th Cir. 1999); *see also* 42 U.S.C. § 12131(2).

The FAC includes a conclusory assertion that Plaintiff was qualified to participate in the College of Pharmacy's education program with reasonable accommodation. (Doc. 16 at 8 ¶ 69.) But the FAC does not specify what accommodation(s) Plaintiff requested or when and to whom she disclosed her disability and requested accommodation(s). Furthermore, the FAC indicates that Plaintiff was academically dismissed from the College of Pharmacy due to her grades. The FAC does not plead facts plausibly showing that Plaintiff met the essential eligibility requirements of the College of Pharmacy with or without reasonable accommodation, or that she was denied the benefits of the College of Pharmacy because of her disability. Accordingly, the FAC fails to state a claim on which relief may be granted under the ADA and the Rehabilitation Act.

**F. Defamation and False Light**

Plaintiff alleges that Cooley maintained statements in University systems about Plaintiff that she knew or reasonably should have known were false, misleading, and materially incomplete, and that she communicated and/or allowed the statements to remain visible to University personnel, University affiliates, and rotation-related personnel. (Doc. 16 at 6, 9-10 ¶¶ 46-49, 86-88, 90-91.)

"A defendant is liable for defaming a private person if he knowingly or recklessly publishes a false and disparaging communication concerning that person to a third party." *BLK III, LLC v. Skelton*, 506 P.3d 812, 817 (Ariz. App. 2022), *as amended*. "As a matter of law, a statement is not actionable if it cannot reasonably be interpreted as stating or implying facts susceptible of being proved true or false." *Id.* (internal quotation marks

omitted). Because the Court must "analyze whether the statement is objectively verifiable as true or false" to determine "whether a defamation action may lie," a complaint must specify "the precise language of the statement allegedly uttered," as well as the statement's "context." *Id.* Similarly, a complaint must identify the statement at issue to state a claim for false light invasion of privacy, as the Court must evaluate whether the statement constitutes "false information or innuendo that a reasonable person would find highly offensive." *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 786 (Ariz. 1989) (internal quotation marks omitted).

Here, Plaintiff alleges that Cooley published false, misleading, and materially incomplete statements in University systems, but the FAC does not specifically identify the statements at issue or provide sufficient details concerning their content and context. Because the Court's analysis hinges on "the context and language" of the statements at issue, conclusory allegations that the statements were false, misleading, or materially incomplete are insufficient to state a claim on which relief may be granted. *BLK III*, 506 P.3d at 817.

For the above reasons, the Court will dismiss Plaintiff's First Amended Complaint with leave to amend.

**IT IS ORDERED** that Plaintiff's First Amended Complaint (Doc. 16) is **dismissed** for failure to state a claim on which relief may be granted. Plaintiff may file a second amended complaint within **thirty (30) days** of the date this Order is filed.

Dated this 17th day of September, 2026.

Honorable Rosemary Márquez
United States District Judge